UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SMITH MARINE TOWING CORPORATION AND KJS TOWING, INC. | CIVIL ACTION |
| VERSUS | NO. 15-5489 c/w 15-5492 |
| EPL OIL & GAS, INC., ENERGY XXI GOM, LLC | SECTION "N" (5) |
| | *THIS ORDER APPLIES TO CASE NO. 15-5492* |

## ORDER & REASONS

Presently before the Court is Defendant Eni US Operating Co., Inc.'s ("Eni") "Renewed Motion for Summary Judgment" (Rec. Doc. 32). Now, having reviewed the parties' briefs and the applicable law, the Court rules as stated herein.

### I. BACKGROUND

Plaintiff Smith Marine Towing Corporation ("Smith Marine") provides marine towing equipment and towing services for the oil and gas industry. In connection with this work, it operates a fleet of vessels including the M/V SMITH PREDATOR, which is owned by Plaintiff KJS Towing, Inc. ("KJS Towing"). The M/V SMITH PREDATOR worked in conjunction with the D/B CAL DIVE PACIFIC, a vessel that requires the use of assist tugs, such as the M/V SMITH PREDATOR, to maneuver and position. Specifically, work was performed in Main Pass 72, Main Pass 244 and Ship Shoal 248. Smith Marine issued two invoices to Cal Dive in connection with this work. Both remain unpaid by Cal Dive, who, in March of 2015, initiated bankruptcy proceedings in the United States District Court for the District of Delaware. The bankruptcy proceedings are ongoing at this time.

While the dates are at issue, it is undisputed that the M/V SMITH PREDATOR assisted the D/B CAL DIVE PACIFIC at Ship Shoal 248D, where the D/B CAL DIVE PACIFIC removed and replaced a damaged helideck. As discovery has confirmed,[1] the D/B CAL DIVE PACIFIC performed this work pursuant to a written agreement between Cal Dive and Eni, the designated operator of Ship Shoal 248. Eni paid Cal Dive in full for its services. Smith Marine, who was not paid by Cal Dive, asserts that it was a third-party beneficiary under the agreement between Cal Dive and Eni.

On April 30, 2015, Plaintiffs filed a statement of privilege in the mortgage records of Plaquemines and Terrebonne Parish in connection with the two aforementioned invoices. Eni, along with Energy XXI GOM, LLC ("Energy XXI") and EPL Oil & Gas, Inc. ("EPL") (collectively "Defendants"), were identified based upon information, obtained from the U.S. Bureau of Ocean Energy Management, indicating that they were the owners, operators or lessees of oil and gas wells in the offshore locations where the work covered by the invoices was performed.[2]

On October 27, 2015, Plaintiffs commenced this action by filing a complaint against the Defendants seeking recognition of a lien, pursuant to the Louisiana Oil Well Lien Act, La. Rev. Stat. § 9:4861, *et seq.*, ("LOWLA") for the towing services performed by Plaintiffs. Alternatively, Plaintiffs asserted causes of action for unjust enrichment and as third party beneficiaries of the

---

[1] Prior to the instant matter being transferred to the undersigned as related to case no. 15-5489, Eni, along with co-defendants EPL and Energy XXI, filed a substantially similar motion for summary judgment near the outset of this case. Judge Fallon, who was then presiding, denied the original motion without prejudice to the defendants' right to re-assert the motion after discovery had been exchanged. Eni does so now, alone.

[2] Eni denies, and there is no evidence to suggest, that it has or had any operating or ownership interest in Main Pass 72, Main Pass 244, or Ship Shoal 208. The only interest relevant to Eni is in Ship Shoal 248, where it was the designated operator.

contracts between Cal Dive and its customers.

The four arguments Eni raises in its renewed Motion for Summary Judgment follow: First, Plaintiffs have no enforceable lien pursuant to LOWLA because they filed their statement of privilege, and provided notice, in an untimely manner. Second, Plaintiffs have no right to a monetary judgment against Eni because the remedy provided by LOWLA is strictly *in rem*.[3] Third, Plaintiffs cannot recover under unjust enrichment because the law provides them with other legal remedies. Finally, Plaintiffs are not entitled to recover as third party beneficiaries because they have no evidentiary support for their claim.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See* Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986);  *see*

---

[3]  Plaintiffs were granted leave to amend their complaint in order to correct a misstatement concerning their third-party beneficiary claim and to clarify that they have asserted an  *in rem* claim, arising under LOWLA, against the property of the Defendants, rather than an *in personam* claim against the Defendants.

*also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001). An issue is considered genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

### III. LAW AND ANALYSIS

### 1. Plaintiffs' Privilege under the Louisiana Oil Well Lien Act

The purpose of the Louisiana Oil Well Lien Act is to protect those who contribute labor, services, and equipment to the drilling of wells from default of those who engage them. *Guichard Drilling Co. v. Alphine Energy Services, Inc.*, 94-1275 (La. 7/3/95), 657 So.2d 1307, 1312. In furtherance of this objective, LOWLA creates a privilege over certain property and in favor of persons who provide, *inter alia*, "trucking, towing, barging, or other transportation services for an operator or contractor, for the price of transporting movables to the well site." La. Rev. Stat. § 4862(A)(4).[4]

The LOWLA privilege attaches to the "operating interest under which the operations giving

---

[4] LOWLA also provides a privilege for contractors "for the price of [their] contract for operations" and "for the price of [their] contract for providing services of facilities to persons performing labor or services on a well site located in the waters of the state." La. Rev. Stat. § 4862(A)(1),(2). Such privilege is established at the time the contractor "begins rendering services at the well site." La. Rev. Stat. § 4864(A)(1). Here, under which subsection of LOWLA the Plaintiffs are asserting their privilege is inconsequential.

rise to the claimant's privilege are conducted." Rev. Stat. § 4863(A)(1).[5] It is established, and is effective as to third persons, when the claimant "begins transporting movables to, or persons to or from, the well site." La. Rev. Stat. § 4862(A)(3).[6]  For the privilege to remain effective as to third persons, the claimant must record a statement of privilege within one hundred-eighty days "after the last activity or event which gives rise to the privilege." La. Rev. Stat. § 4865(A)(1). Failure to do so in a timely manner results in the privilege ceasing to be effective *as to third persons*. *Id.*[7]

In this case, Eni is not contractually bound to Plaintiffs, at least not for the obligation secured by the privilege, which is payment for the services of the M/V SMITH PREDATOR. Eni has not expressly assumed that obligation, either. Therefore, Eni is considered a "third person" under the statute, and, as a consequence, Plaintiffs are required to have filed a statement of privilege in the mortgage records of Terrebone Parish, where Ship Shoal 248 is located, within one-hundred-eighty days after the last activity or event giving rise to the privilege particular to Ship Shoal 248. *See* La.

---

[5]  "An 'operating interest' is a mineral lease or sublease of a mineral lease, or an interest in a lease or sublease that gives the lessee, either singly or in association with others, the right to conduct the operations giving rise to the claimant's privilege." Rev. Stat. § 4861(5)(a).

[6]  "A 'third person' is a person, including a lessee or operator, who is not contractually bound to the claimant for the obligation secured by a privilege or who has not expressly assumed the obligation." La. Rev. Stat. § 4861(11).

[7]  Within the same one hundred-eighty day filing period, the claimant is also required to provide notice of the privilege to the operator, if the privilege is established over property other than a rig (drilling or otherwise) not owned by the operator. *See* La. Rev. Stat. § 4867. The term "operator" is defined by statute to mean "a lessee who is personally bound by contract to the claimant or to a contractor from whom the claimant's activities giving rise to the privilege emanate. La. Rev. Stat. § 4861(7).  When required, failure to provide notice to the operator results in extinguishment of the privilege. La. Rev. Stat. § 4867. Here, given the Court's holding, it is unnecessary to address notice.

Rev. Stat. § 4865(A)(1).[8]  Only by doing so could Plaintiffs have preserved the privilege, as to Eni, beyond the one-hundred eighty day filing period. *See* La. Rev. Stat. § 4865.

The parties dispute the operative date for the start of the filing period. As previously mentioned, the D/B CAL DIVE PACIFIC, with the assistance of the M/V SMITH PREDATOR, removed and replaced a helideck for Eni at Ship Shoal 248.  Eni has presented evidence that October 12, 2014 was the last date the D/B CAL DIVE PACIFIC – and, thus, Cal Dive's subcontractors – performed this work at Ship Shoal 248. For the work, Cal Dive issued invoice number 300631 to Eni. (Rec. Doc. 32-4 at p.70).  Invoice 300631, and other documents of Cal Dive, designate the helideck job as work project number C21010. (*See Id.* at pp. 70-79). The D/B CAL DIVE PACIFIC's daily log of October 12, 2014, reveals that the vessel worked on two different jobs that day – the helideck job (C-21010) at Ship Shoal 248D and another job (V-4514) at South Timbalier 54. (*Id.* at p.79). The October 12 log also contains a descriptive entry stating, "End of Job # C-21010 Start V-4514 S4 anchor on bottom at South Timbalier 32." (*Id.* at p. 79).

Because the dailylog is evidence that the helideck job ended on October 12, 2014, the summary judgment burden shifts to Plaintiffs, who must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation omitted). Plaintiffs have not produced any evidence to contradict the

---

[8]  The LOWLA privilege is operating interest specific, meaning services rendered at one operating interest do not give rise to a lien at a different operating interest. *See* La. Rev. Stat. § 4863(A).  With regard to the instant motion, only the services provided by the Plaintiffs in connection with Ship Shoal 248 are relevant to the determination of the applicable filing period; Eni has not been shown to have an operating or ownership interest in any of the other leases raised in connection with this litigation.

log and Eni's position that the work at Ship Shoal 248 ceased on October 12, 2014. Instead, Plaintiffs argue that, pursuant to maritime "custom and practice," the M/V SMITH PREDATOR was still "on the clock" as it voyaged to its next job. However, Plaintiffs do not provide any summary judgment evidence, such as an affidavit or deposition testimony, in support of their contention.

In the absence of any evidence to the contrary, the Court finds October 12, 2014 to be the operative date for calculating the filing period, such that Plaintiffs had until April 10, 2015 to file a statement of privilege related to Eni's operating interest at Ship Shoal 248. It is undisputed that Plaintiffs did not file the statement until April 13, 2015, three days later. Due to the untimeliness of the filing, it was ineffective in preserving the privilege as to a third person, like Eni, with an operating interest in Ship Shoal 248. Accordingly, Plaintiff's LOWLA claim, as asserted against the property of Eni, is dismissed with prejudice.

### 2. The Third-Party Beneficiary Claim

Plaintiffs are not in privity of contract with Eni, but they seek compensation directly from Eni on the theory that they are third party beneficiaries of Eni and Cal Dive's contract.[9] The parties do not brief the issue of whether Louisiana law or general maritime law applies, and they reference both in their memoranda. Under either regime, the outcome of the analysis is the same. Both sets of law require the contracting parties to manifest a clear intent to benefit the third party. *Branch v. Art Catering, Inc.*, 2007 WL 1747023, at *1 (E.D.La. 2007) (*citing Greenslate v. Tenneco Oil Co.*, 623 F.Supp. 573, 576 (E.D.La.1985); La. Civ. Code art.1978; and *Concept Design, Inc. v. J.J. Krebs & Sons*, 96-1295 (La.App. 4 Cir. 3/19/97); 692 So.2d 1203, 1205-06 ("in order to establish a

---

[9] For purposes of this motion, and in deference to Plaintiffs, the Court finds that the "contract" between Eni and Cal Dive consists of Master Service Agreement ("MSA") 09-0028 and Blanket Order 5000004150.

7

stipulation *pour autrui* there must be a clear expression of intent to benefit the third party").

Under Louisiana law, three factors determine whether a stipulation *pour autrui* is present: "(1) The stipulation for a third party must be manifestly clear; (2) There must be certainty as to the benefit owed the third party; and (3) The benefit must not be a mere incident of the contract between the promisor and the promisee." *River Docks, Inc. v. J. Gerber, Inc.*, 2009 WL 498520, at *5 (E.D.La. Feb.25, 2009) (unpublished) (*citing Joseph v. Hosp. Serv. Distr. No. 2 of the Parish of St. Mary*, 05-2364, p. 8 (La. 10/15/16); 939 So.2d 1206, 1212). "The benefit to the third party must be a direct benefit, and the contract must clearly provide that the direct benefit to the third party forms the condition or consideration of the contract." *River Docks*, 2009 WL 498520, at *5 (citing *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 931 (5th Cir. 1995).

The *River Docks* decision is particularly persuasive in this case. There, a charter agreement between a charterer and subcharterer of barges expressly gave the owners of the barges certain benefits, such as "direct payment for total loss and [] rights . . . that enable[d] Owners to recover interest on any unpaid sum and to recover legal costs expended to enforce [the charterer's rights], not Owner's rights, under the Charter." *Id.* at *5, 8. When the charterer failed to pay the owners under a separate agreement, the owners sued as third party beneficiaries to the charter. *Id.* at *1. The court held that the owners were not third party beneficiaries,  as their rights were merely "incidental to the purpose of chartering the barges to [the subcharterer] and [the subcharterer's] promise to pay charter hire to [the charterer], *Id.* at *8. Comparing the provisions of the charter to "specific indemnity provisions or limited insurance provisions," the court explained that a right arising therefrom "neither expresses an intent to contract for the benefit of [a third party] nor confers a benefit on [a third party] as the condition or consideration of the Charter. *Id.* (internal quotation

marks and citation omitted). Accordingly, the court concluded that the barge owners could not recover charter hire under the agreement between the charterer and subcharterer. *Id.* at *9.

Unlike the charter agreement in *River Docks*, which bestowed multiple benefits upon the barge owners, who were not third party beneficiaries, the contract in this case provides Plaintiffs only a single express benefit. That benefit comes in the form of an indemnity provision under which Eni agreed to indemnify and defend Cal Dive and its subcontractors from personal injury claims of Eni's employees. While this provision gives Plaintiffs a limited right, it is manifestly clear that Eni and Cal Dive intended to make Plaintiffs third party beneficiaries in any other respect, including to the promise of payment. Casting further doubt on Plaintiff's position, the MSA contains a "Claims and Liens" section that appears aimed at preventing a claim or lien of the very nature of the present action, that is, for the services of a subcontractor uncompensated by Cal Dive.[10] Even viewing it in the light most favorable to Plaintiffs, the Court finds the contract to abound with uncertainty on this issue. Thus, Plaintiffs have fallen short of the lofty standard applied to third-party beneficiary claims.

### 3. Unjust Enrichment

Pursuant to La. Civ. Code art. 2298, unjust enrichment is a subsidiary remedy that is disallowed where the law provides another remedy. La. Civ. Code art.2298. The remedy is a gap filler, and it is not available in the case at bar. *See  Walters v. MedSouth Record Management, LLC*, 10-353, p. 2 (La. 6/4/10); 38 So.3d 243, 244 ("Having pled a delictual action, we find plaintiff is

---

[10]   In relevant part, Section 15 states, "The Work performed by [Cal Dive] shall be performed and delivered free of any and all claims or liens on labor or equipment furnished or used by [Cal Dive] or any of its subcontractors. To this end, [Cal Dive] shall timely pay and discharge any such claims or liens and allow no such claim or lien to become fixed upon any property [of Eni]." (Rec. Doc. 37-3 at p.3).

precluded from seeking to recover under unjust enrichment."). Moreover, that a plaintiff fails to pursue another available remedy does not give it the right to recover under a theory of unjust enrichment. *Id.* (*citing Jim Walter Homes v. Jessen*, 98-1685, p. 13 (La. App. 3 Cir. 3/31/99); 732 So.2d 699, 706 ("[t]o find that Jim Walter Homes now has no other remedy and to provide it one under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of action prescribe, or any plaintiff who knowingly wrote a bad contract, to recover under an enrichment theory"). Here, Plaintiffs have a contractual action against Cal Dive, and they had a lien under LOWLA, which, as against Eni, they failed to preserve. The existence of these remedies defeats their claim for unjust enrichment.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion for Summary Judgment is **GRANTED** and that all claims, as asserted against Eni, are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 27th day of April, 2016.

**KURT D. ENGELHARDT**
**United States District Judge**

10